Wright, J.,
delivered the opinion of the court:
As may be discovered by reference to the findings of fact, the claimant herein was given three separate contracts for the transportation of mails in covered regulation mail wagons, one in Boston, another in Brooklyn, and still another in Omaha.
There are items for compensation in the cases of all the contracts for service, claimed to have been rendered at defendants’ request outside the terms of the contracts, as it has been alleged, and much argument has been urged upon our attention in support and refutation of the respective contentions of the parties in this regard. In addition to these items of *585 so-called extras, the claimant insists upon compensation for carrying the mails between Back Bay and Brookline post-offices, the latter being outside the city of Boston; but as this service was performed without the knowledge or request of anyone haying defendants’ authority, this item, it is plain, can not be allowed, and it will be dismissed from the case without further notice. (Whitsell v. United States, 34 C. Cls. R., 5.)
The chief claim growing out of the Boston and Brooklyn contracts is for a discontinuance by the Postmaster-General of all the service described in, and which was being performed under, those contracts, resulting, as has been argued by claimant, in a breach of the contracts by the defendants, and consequent damage to. him; Both the right of the claimant to compensation for alleged extra services, and to damages for the termination of the services of the claimant, as was done, may be disposed of by correct interpretations of the contracts themselves.
In every essential particular, as relates to the points in question, the contracts are alike, and in them claimant agreed to perform all new, or additional, or changed covered regulation wagon, mail-messenger, transfer, and mail-station service that the Postmaster-General might order during the contract term, without additional compensation, whether caused by change of location of post-office, stations, landing, or the establishment of others than those existing at the date of the contract, or rendered necessary, in the judgment of the Postmaster-General, for any cause, and to furnish such advance wagons or extra wagons from time to time for special or advance trips as the Postmaster-General might require as a part of such new or additional service; that the Postmaster-General might change the schedule and termini of the route, vary the routes, increase, decrease, or extend the service thereon, without change of pay; and that the Postmaster-General might discontinue the entire service whenever the public interest, in his judgment, should require such discontinuance, but for a total discontinuance of service claimant should be allowed one month’s extra pay as full indemnity.
In support of the right to recover for the items of extra service, as he has described them, claimant has produced *586 argument to prove that such services were extra services, as distinguished from new, or additional, or changed service, described in the contracts, for which no additional compensation should be given. The service so described was such as might be rendered necessary for an}' cause, in the judgment of the Postmaster-General. It must, of course, be connected with, or an incident to, the covered wagon mail-messenger, transfer, and mail-station service, for such only is the subject-matter of the contracts. It is easily seen that the extra service claimed for readily falls within the class or description of service specified in the contracts, or in part of, or incident to such service, rendered necessary for some sufficient cause. The discretion or judgment of the Postmaster-General, given b}r the contract, to determine the necessity of such service,, ought not to be questioned, unless to prevent unwarranted or unjust interruptions of the contract rights vested in the claimant. It will not be presumed that officer required the performance of services not demanded by the exigencies of the business. Nothing appearing to the contrary, it will be assumed that the service required was necessary to the proper administration of the powers conferred by law upon the head of the Department, which was clearly reserved by the stipulations contained in the contracts. The distinction endeavored to be pointed out between extra services and new and additional services is not seen. Extra or additional services are synonymous. There can be no difference in the meaning of the words, and whether called by the one or the other name' the services equally fall within the description given to them by the contracts.
It is also insisted that the change of part of the service from covered regulation wagon to street-railway service was unwarranted by the contract. We are unable to give effect to the terms of the contract giving authority to vary the routes, increase or decrease or extend the service thereon, without supporting the change to street-railway service, the only effect of which was-to decrease the service undertaken by claimant, and which was clearly authorized by the contracts. The cause or reason why such change, or decrease of service, might be made was not stated in the contracts, but left to the discretion of the Postmaster-General. It is true the contract provided *587 that such decrease was to be without change of pay, and if this was the only provision of the contract in this regard, there would be much force in claimant’s contention, but all the provisions of the contracts must be considered and given the effect intended by the parties when thoj' were entered into.
After the service had been decreased, as stated, the Postmaster-General submitted to claimant a proposition, or suggestion, that he voluntarily relinquish part of the contract price for the continued performance of the services remaining after the change of a part thereof to the street railways, but claimant declined, in which, no doubt, he was clearly within his rights. In other words, he was under no obligation, under the contracts, .to continue at a reduced price. So, therefore, the proposition and its rejection had no effect whatever upon the rights of either party, as defined by the contracts, and such were left to be detérmined bjr the provisions thereof, according to the terms and stipulations contained therein. The contracts gave to the Postmaster-General authority to discontinue the entire service whenever the public interest, in his judgment, should require such discontinuance, the claimant in such case to be allowed one month’s extra pay as full indemnity, and this he did in the Boston and Brooklyn contracts.
Against this action of that officer it is argued that he discontinued the service because claimant declined to continue at a reduced rate, but we have not found the action of the officer was so influenced.. We must presume, nothing appearing to the contrary — and it does not — such action was influenced solely because, in his judgment, the public interest required the discontinuance of claimant’s services under the contracts in question. We can see, also, there was good reason for such conclusion. The service had been rightfully decreased, under the stipulations of the contracts, until the services remaining to be performed were not reasonably worth the original contract rate, and to have continued its payment would have been contrary to public interests, and, while claimant was under no obligation to continue in -the service at a reduced rate, the head of the Department was obligated, as well by the duties of his high office as the provisions of the contract, to subserve the public interests in taking care *588 that no unreasonable compensation was paid for the services actually performed.
It is insisted, however, that by the contracts was meant the discontinuance of the service entirely — that is, an abandonment of all mail service in the cities in question. The mere statement of this position, we think, is its own demolition. It is unreasonable to believe that it was in the mind of anybody, when the contracts were made, that all mail service in any of the cities named would ever be abandoned. Such clearly was not the intention of the parties in the use of the language employed. That which was intended, however, and by the words of the contracts accomplished, was that the performance of the entire service by the claimant might be discontinued by the Postmaster-General whenever the public interest, in his judgment, required it. The power reserved in the contract to the Postmaster-General to discontinue the entire service, whenever the public interests in his judgment should require it, was the same, and none other, than the power to annul the contract when his judgment advised that it should be done (Garfielde v. The United States, 93 U. S., 246); and this being true, the only effect of such annulment would be to discontinue the further performance by claimant of the service described in the contract, and not an abandonment, for future time, of the mail service in the cities mentioned, to be let and performed as in other cases.
In conformity to the views herein expressed, the 'petitiou of the claimant should be dismissed, and it is ordered accordingly.