## SLAVENS *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 228.  Argued December 7, 8, 1904.—Decided  January 9, 1905.

Under the mail contract in this case, which was made in pursuance of the Postal Laws and Regulations, and after the service had materially decreased by changed methods of transporting mail and the Postmaster General had offered the contractor, who had refused to accept it, the remaining work at a lower compensation, it was within the power of the Postmaster General to put an end to the contract by order of discontinuance, allowing one month's pay as indemnity, and to relet the remaining service; the power to terminate the contract on allowing a month's pay as indemnity was not predicated on an abandonment of the entire service.

While the provisions in a similar contract that the contractor should perform without additional compensation all new or changed service that the Postmaster General should order, might not be construed as extending to services of different character and not within the terms of the contract, where the changed service is to take the mail to and from street cars, met at crossings, instead of landings and stations, it comes within the power reserved to the Postmaster General and the contractor is not entitled to additional compensation therefor.

In the absence of authority shown, a local postmaster has no power or authority to contract in respect to mail messenger service, and is not the agent of nor can he bind the Government for that purpose, and if a contractor performs services which he protests against as not being within his contract, solely on the postmaster's order, he is not entitled to extra compensation therefor after his protest has been sustained and the service let to others.

THE appellant filed his petition in the Court of Claims to recover for the alleged wrongful termination of certain mail contracts in the cities of Boston, Brooklyn and Omaha; and, also, for extra services performed in connection therewith. The Court of Claims, in disposing of the case, made separate findings of fact and conclusions of law. The findings of fact may be abridged for the purpose of this case, reference being made for fuller details to the findings in the Court of Claims. 38 C. Cl. 574. In pursuance of an advertisement for proposals for transporting the mails—"covered regulation wagon, mail,

messenger and mail station service"—the appellant entered into contracts for four years each for the cities of Boston and Brooklyn, and two years for the city of Omaha. The Boston and Brooklyn contracts began on July 1, 1893, and the Omaha contract on July 1, 1894. Compensation for the Boston contract was at the rate of $49,516 per annum; for the Brooklyn contract, $18,934 per annum, and for the Omaha contract at $3,780 per annum. During the terms of the Boston and Brooklyn contracts the Postmaster General determined to carry certain of the mails within the district contracted for on electric street railway lines. In both cases the appellant was offered the privilege of continuing the contract for the reduced service, but refused to do so in each case. The Postmaster General terminated the Boston and Brooklyn contracts, above referred to, the former on February 1, 1896, the latter on March 1, 1896, acting, as he avers, under the authority vested in him by law and the contract between the parties, but not because of any negligence or default on the part of the contractor. He afterwards relet the same service, as thus reduced, to another contractor, for the remaining period of the contract of the seventeen months of the Boston contract, at the compensation of $37,000 per annum. The difference between the contract price and the amount it would cost the appellant to furnish the service in Boston during said seventeen months would be $18,884.14. The service of the Brooklyn contract for the remaining period of sixteen months was let to another contractor at a compensation of $9,720 per annum. The court did not find the amount of the loss to the appellant by reason of the termination of this contract. The contracts contained certain stipulations, as set forth in the opinion.

The contracts covered certain specified stations, landings and mail stations from which the contractor was required to carry the mail, and during the terms of such contracts he was required to perform certain services, which he alleges to be extra services, and for which he was entitled to extra compensation—in the Boston contract, carrying the mails from the gen-

eral post office in the city of Boston to the stopping places of the street car lines of the railway company from May 1, 1895, until February 1, 1896. Also, carrying the mails between the Back Bay post office and the Brookline office, a distance of from two and a half to three miles, which services were not included in the terms of the contract, but which he was required to perform by the postmaster of the city of Boston, against his protest. The contractor did not protest to the Postmaster General or any officer of the Post Office Department until August 14, 1899. Whereupon the Postmaster General dispensed with the service by the appellant, and entered into a contract with another contractor to perform the service.

Under the Brooklyn contract, which contained specifications as to the places between which the mail had to be carried during the term of the contract, the contractor was required to perform service between the Brooklyn post office and the mail routes established on the street car lines, and between the motor routes and the mail stations. Under the Omaha contract appellant was required, in addition to the places specifically named in the contract, to carry the mail to and from street cars of the Omaha Street Railway at its crossings. It also appears that under the three contracts the new service required, in lieu of the service specified in the contract, was much less in mileage required than was the service stipulated by the original contract. The Court of Claims dismissed the petition, 38 C. Cl. 574, and the claimant appeals to this court.

*Mr. A. A. Hoehling, Jr.,* for appellant.

*Mr. Special Attorney Joseph Stewart,* with whom *Mr. Assistant Attorney General Pradt* was on the brief, for the United States.

MR. JUSTICE DAY, after making the foregoing statement, delivered the opinion of the court.

From the foregoing statement of facts it is evident that the

case resolves itself into three propositions: (1) Can the appellant recover for the alleged wrongful termination of his contracts by the Postmaster General?    (2) Under the contracts were the services performed in carrying mails from the street cars, at the places designated, extra services for which compensation outside of the contract should be awarded?    (3) Under the Boston contract did the service required in carrying the mails to and from Brookline constitute extra service, for which compensation should be awarded?

To determine the first proposition it is essential to have in mind certain provisions of the statute, the preliminary notice to bidders, and, most important of all, the terms of the contract itself.    In the notice to bidders it is said:

"There will be no diminution of compensation for partial discontinuance of service or increase of compensation for new, additional or changed service that may be ordered during the contract term; but the Postmaster General may discontinue the entire service on any route whenever the public interest, in his judgment, shall require such discontinuance, he allowing, as full indemnity to the contractor, one month's extra pay."

In the contract it is stipulated:

"It is hereby stipulated and agreed by the said contractor and his sureties that the Postmaster General may change the schedule and termini of the route, vary the routes, increase, decrease, or extend the service thereon, without change of pay; and that the Postmaster General may discontinue the entire service whenever the public interest, in his judgment, shall require such discontinuance; but for a total discontinuance of service the contractor shall be allowed one month's extra pay as full indemnity."

Section 817, Revised Statutes, Postal Laws and Regulations, 1887, provides:

"The Postmaster General may discontinue or curtail the service on any route, in whole or in part, in order to place on the route superior service, or whenever the public interests,

in his judgment, shall require such discontinuance or curtailment for any other cause, he allowing as full indemnity to the contractor one month's extra pay on the amount of service dispensed with, and a *pro rata* compensation for the amount of service retained and continued."

Under the power supposed to be conferred upon him by the terms of the contract, made in pursuance of the preliminary advertisement and the authority vested in him by the Postal Laws and Regulations, above cited, the Postmaster General, having decreased the service under the contract, by reason of the introduction of the method of carrying the mails on the street railways, until the service required originally would be much more than paid for by the compensation agreed upon, discontinued the original service, and, the contractor declining to perform the work remaining at the lower compensation, put an end to the contract by an order of discontinuance, allowing the contractor one month's extra pay as full indemnity. It is contended by the appellant that this contract, properly construed, while it permits the Postmaster General to make changes in the schedule and termini of the route, to reduce the same, to increase, decrease or extend the service, without change of pay, does not confer the right to cancel the contract except upon abandoning the entire service, which may be done with the allowance of one month's extra pay to the contractor. But, it is insisted, so long as any part of the service remains to be performed, it is not within the power of the Postmaster General to put an end to the service of the contractor and relet a part of it to another, substituting a different character of service for a part of the field theretofore covered by the contract. In other words, it is contended that the total discontinuance of service, which only can terminate the contract, must not leave any service to be performed in the district covered.

We cannot accede to this narrow construction of the powers given the Postmaster General by the terms of this contract. He is given general power to increase, decrease or extend the

service contracted for, without change of pay. Furthermore, whenever the public interests in his judgment require it, he may discontinue the entire service. We think the advertisement and the regulations under which this contract was made and the contract as entered into were intended to permit the Postmaster General, when in his judgment the public interest requires it, to terminate the contract, and if a service of a different character has become necessary in his opinion, to put an end to the former service upon the stipulated indemnity of one month's extra pay being given to the contractor. It is not reasonable to hold that the power given to the Postmaster General for the public interest can only be exercised when the mail service in the district is to be entirely abandoned. In the present case the contract was for mail service in three cities of importance, two of them among the large cities of the country, and all of them thriving and growing communities. It is hardly possible that the parties, in making this contract, could have had in view a time when the mail service would be dispensed with. On the other hand, the condition which the contract contemplated, and which in fact arose, made it desirable to extend to this district the use of street railways to carry the mails, with which to improve the facilities for mail delivery.

The authority given to the Postmaster General is broad and comprehensive, requiring him to exercise his judgment to end the service, and thereby terminate the contract, whenever the public interest shall demand such a change. In that event the contractor takes the risk that the exercise of this authority might leave him only the indemnity stipulated for— one month's extra pay. We are not called upon to say in this case that the Postmaster General, merely for the purpose of reletting the contract at a lower rate, may advertise and relet precisely the same service for the purpose of making a more favorable contract for the Government, no change having arisen in the situation except the desire for a better bargain. And it may readily be conceived that in some instances there

may be such a diminution of the service contracted for in the district, by reason of the substitution of new and improved methods, as will render the compensation agreed upon altogether disproportionate to the services left to be rendered, and thereby invoking the authority of the Postmaster General to exercise the power reserved to him to terminate the contract. In the present case the findings of fact do not disclose a case of the arbitrary exercise of power. A new means of service within the district by means of the street railway was deemed by the Postmaster General to be required in the public interest. This necessitated the cutting down of the former service to make way for the new, and the Postmaster General exercised the power given him under the contract, and put an end to the service and the contract. If the contention of the appellant is to be sustained, while in the present case the street railway service was not a large proportion of the total service required, the same argument, carried to its legitimate conclusion, would prevent the Postmaster General from taking advantage of this stipulation, although it was manifest that a large proportion, maybe practically all, of the service could be better rendered to the public by substituting the new method, leaving only ε small part of the old service to be rendered. In this cor tingency, as construed by the appellant, the contract pric must still be paid, notwithstanding the changed condition . These contracts were made for a term of years; two for fov years and one for two years. It is insisted that the construction contended for by the Government practically puts the contractor into the power of the Postmaster General, and makes the stipulation, in substance, an agreement upon his part to do whatever that officer may require. The obvious answer to this contention is that the contractor is not obliged to carry on the contract when the Postmaster General elects to cancel it. Such action puts an end to the obligations of the contractor as well as the Government. Under the postal regulations, it appears that the contractor is given the opportunity to perform the reduced service at a lower rate. This he was not obliged

to do, and, in the present case, declined to undertake. Our conclusion is that, acting in good faith, of which there is every presumption in favor of the conduct of so important a department of the Government, the Postmaster General may, as was done in this case, discontinue the service, and thereby put an end to the contract when the public interest, of which he is the sole judge, authorizes such action.

This view of the contract renders it unnecessary to consider at length the provisions of section 817 of the Postal Laws and Regulations, above quoted. It is urged that this section applies more particularly to star route and steamboat service, but the provisions of the law are broad and comprehensive, and not limited by the terms of the act to such specific service, but the power is given the Postmaster General whenever, in his judgment, the public interest shall require, to discontinue or curtail the same, giving the contractor as indemnity one month's extra pay. Speaking of the action, authorized under section 263 of the former rules and regulations, this court, in *Garfielde* v. *United States*, 93 U. S. 242, 246, said:

"There was reserved to the Postmaster General the power to annul the contract when his judgment advised that it should be done, and the compensation to the contractor was specified. An indemnity agreed upon as the amount to be paid for cancelling a contract, must, we think, afford the measure of damages for illegally refusing to award it."

And upon similar contract stipulations this court in *Chicago & Northwestern Railway Co.* v. *United States*, 104 U. S. 680, 684, said:

"It is true, that under this reservation the Postmaster General would be authorized to discontinue the entire service contemplated by the contract, and the practical effect of that would be to terminate the contract itself, on making the indemnity specified."

As to the other claim for extra services: In the stipulation of the contracts, it appears that the contractor was required to perform all new or additional or changed covered wagon

mail station service that the Postmaster General should order, without additional compensation, whether caused by change of location of post office, stations or landings, or by the establishment of others than those existing at the time of the contract, or rendered necessary in the judgment of the Postmaster General from any cause, and that officer has the right to change the schedule, vary the routes, increase, decrease or extend the service without change of pay. It is insisted that these stipulations, properly construed, permit the Postmaster General to require only additional service of the same kind as that stipulated for, and that the carrying of the mails from street cars, where the same might be ordered to be met at crossings, was a new and different kind of service, and was not a change caused by a different location of a post office, station or landing within the meaning of the contract. But we think this is too narrow a construction of the terms of the agreement. Strictly speaking, the carrying of the mails from the street cars at the crossings is not taking them from the stations, but it practically amounts to the same thing. It imposes no additional burden upon the contractor; indeed, the findings of fact show that it greatly decreased his burden by lessening the number of miles of carrying required. We think this change of service was fairly within the power reserved to the Postmaster General, and the right given to him to designate such changes in the service as the public interest might require in the performance of this contract. It is true that if these services were not within the terms of the contract, and if they were of a different character, the fact that they greatly decrease the burden of the contractor might not require a disallowance of the claim for extra services. But we think the services were within the contract, fairly construed, and do not entitle the contractor to extra compensation.

In reference to the services rendered in Boston, required by the postmaster, between Back Bay station, in Boston, and the Brookline post office outside the limits of the city of Boston and not within the terms of the contract, it does not appear

that the requirement of such service was made, except by the postmaster of the city of Boston, who had no authority, so far as we can discover, to require such service. When the claimant protested to the Postmaster General he was promptly relieved from the service, and another contract was made for the performance of the same.

It is said that this claim is in all respects like the one sustained by this court in *United States* v. *Otis,* 120 U. S. 115, where the contractor was allowed extra compensation for carrying the mails across the Hudson River from the Pennsylvania Railway depot at the foot of Cortlandt street, New York, to the depot of the same line in Jersey City, N. J., when the contract required him to carry the mails only to and from the depots in New York. In the opinion in that case Mr. Justice Blatchford pointed out that the United States directed the performance of the service. Presumably this was done by some one having authority of the United States. In this case the Court of Claims has held, as we think rightly, that the postmaster, having no power or authority to contract in respect to the mail messenger service, was not the agent of the Government for such service, and could not bind the Government by his knowledge or acts in respect thereto. *Roberts* v. *United States,* 92 U. S. 41, 48; *Hume* v. *United States,* 132 U. S. 406; *Whitsell* v. *United States,* 34 C. Cl. 5. As the additional service in this case was not required by the authorized agent of the Government, we think the contractor is not entitled to extra compensation therefor.

Finding no error in the proceedings of the Court of Claims, its decision is

*Affirmed.*