Peelle, Ch. J.,
delivered the opinion of the court:
The defendants demur to the petition on the ground that the facts averred are not sufficient in law to constitute a cause of action.
The substantiaPfacts are these: Pursuant to the advertisement for proposals therefor John B,. Crittenden became the contractor to transport the United States mails over route 78108 from Valdez, via the stations named in the contract, to Eagle, Alaska Territory, “ 428 miles and back once a week from November 1 to April 30 and twice a week from May 1 to October 31 in each year ” for the period of four years from May 1, 1906, at and for the consideration of $46,000 per annum.
The contractor having given the required bond with the claimant as one of his sureties entered upon the performance of the contract, and with the financial assistance of the claimant herein performed the service thereunder until May 1, 1908, when the contractor, after having obtained conditional permission therefor, sublet the contract to the claimant herein.
The contract so sublet to the claimant was as to service and compensation identical with the contract with said Crittenden and otherwise obligated the claimant to comply with the terms of said contract.
*148 By the terms of the contract with the original contractor it was provided that “ the Postmaster General may discontinue or extend this contract, change the schedule and termini of the route, and alter, increase, decrease, or extend the service, in accordance with law, he allowing not to exceed a pro rata increase of compensation for any additional service thereby required, and, in case of decrease, curtailment, or discontinuance of service, as a full indemnity to said contractor, one month’s extra pay on the amount of service dispensed with, and not to exceed á pro rata compensation for the service retained; but no increase of compensation shall be allowed for a change of service not amounting to an increase, nor indemnity of month’s extra pay for any change of service not involving a decrease of service.”
Section 1277 of the postal laws and regulations provides:
“The Postmaster General may discontinue or curtail the service on any mail route, in whole or in part, in order to place on the route superior service, or whenever the public interest, in his judgment, shall require such discontinuance or curtailment for any other cause, he allowing as full indemnity to the contractor one month’s extra pay on the account of service dispensed with, and a pro rata compensation for the amount of service retained and continued.”
Prior to the claimant’s contract he had, as averred, advanced money to the contractor with which to purchase the necessary equipment and supplies, and later entered into a partnership with him to protect himself in the performance of the contract, and so continued until a short time before the date of the contract in suit.
By reason of the unusual conditions existing in Alaska, i. e., on account .of severe weather and the absence of highways over which to carry the mails, the claimant, as averred, was compelled to transport along the route at great expense a sufficient outfit or supply of food both for man and beast for one year, and to construct bridges across streams and build cabins and stables, all with the expectation of the continuance of the contract for the period of four years from July 1, 1906; that the discontinuance of the service prior thereto, to wit, September 30, 1908, with only one month’s pay, involved him in great loss in excess of the amount so *149 paid, besides the loss of profits which, he avers, he might have made by reason of his preparation and expenditures for the performance of the residue of the service.
The claimant contends that the postal laws and regulations referred to do not apply to the transportation of mails in Alaska, although the claimant, by the terms of his contract, obligated himself to comply therewith in the performance of the service.
The language of the contract with Crittenden (which contract the claimant obligated himself to carry out) is substantially the language of the postal laws and regulations, and, therefore, to sustain the contention of the claimant the court, in addition to holding that the postal laws and regulations do not apply, would have to eliminate similar provisions from the contract.
That the Postmaster General had the authority to discontinue the service in whole or in part, both by the terms of the contract and the postal laws and regulations incorporated therein, there can be no question; and as the language both of the contracts and the postal laws relating to the authority of the Postmaster General to discontinue the service is free from ambiguity, no interpretation thereof is permissible.
The claimant’s contention that in the interpretation of any particular clause of a contract the court should examine and consider the entire contract is well founded; and if the provisions of the contract respecting the authority of the Postmaster General to discontinue the service were susceptible of interpretation we should, in view of the evident hardships imposed in this case, resolve the doubt in favor of the claimant. However, the difficulties in the way of performance of the contract, the court must presume, were taken into consideration by the contractor when he made his bid for the service. The real hardship imposed upon him was in the discontinuance of the service and the payment of only one month’s extra pay. This course left the claimant with his equipment, consisting of stock, dogs, and provisions, on hand, remotely scattered, and deprived him of the profits which he claims would have accrued to him had he *150 been permitted to continue the service until the end of the contract period.
In the case of Slavens v. United States (196 U. S., 229, 233-236), affirming this court (38 C. Cls., 574), the claimant contended that the total discontinuance of the service was essential to a termination of the contract; but in response to that contention the court said:
“We can not accede to this narrow construction of the powers given the Postmaster General by the terms of this contract. He is given general power to increase, decrease, or extend the service contracted for, without change of pay. Furthermore, whenever the public interests in his judgment require it, he may discontinue the entire service. We think the advertisement and the regulations under which this contract was made and the contract as entered into were intended to permit the Postmaster General, when in his judgment the public interest requires it, to terminate the contract, and if a service of a different character has become necessary in his opinion, to put an end to the former service upon the stipulated indemnity of one month’s extra pay being given to the contractor. It is not reasonable to hold that the power given to the Postmaster General for the public interest can only be exercised when the mail service in the district is to be entirely abandoned. * * *
“ The authority given to the Postmaster General is broad and comprehensive, requiring him to exercise his judgment to end the service, and thereby terminate the contract, whenever the public interest shall demand such a change. In that event the contractor takes the risk that the exercise of this authority might leave him only the indemnity stipulated for — one month’s extra pay. * * *
“Our conclusion is that, acting in good faith, of which there is every presumption in favor of the conduct of so important a department of the Government, the Postmaster General may, as was done in this case, discontinue the service, and thereby put an end to the contract when the public interest, of which he is the sole judge, authorizes such action.” (See also Travis v. United States, 196 U. S., 239.)
It will thus be seen that the decision of the Postmaster General, in the absence of fraud, not charged, to discontinue the service in whole or in part is not open to review by the courts.
The further contention of the claimant to the effect that because a portion of the service so discontinued was per *151 mitted to be performed by others without first giving the claimant an opportunity to perform was an arbitrary exercise of power is not well taken, as by the terms of the Postal Regulations recited the Postmaster General was empowered to “ discontinue or curtail the service, in whole or in part, in order to place on the route superior service, or whenever the public interest, in his judgment, shall require such discontinuance or curtailment for any other cause, he allowing as full indemnity to the contractor one month’s extra pay on the amount of service dispensed with.”
From what we have said, notwithstanding the hardships imposed upon the claimant in discontinuing the service, the demurrer must be sustained, which is accordingly done, and the petition dismissed.